1

2                                                    **E-Filed 12/06/07**

3

4

5

6

7

8                              NOT FOR CITATION

                   IN THE UNITED STATES DISTRICT COURT
9
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
                            SAN JOSE DIVISION
11

12

13   ELIZABETH DEL CARMEN PEZOA,           Case Number C 05-03717 JF

14                  Plaintiff,             ORDER[1] DENYING PLAINTIFF'S
                                           MOTION FOR LEAVE TO FILE A
15          v.                             SECOND AMENDED COMPLAINT

16   COUNTY OF SANTA CLARA, et al.,        [re: docket no. 51]

17                  Defendants.

18

19          Plaintiff Elizabeth Del Carmen Pezoa ("Pezoa") seeks leave to file a Second Amended

20   Complaint ("SAC").  Defendants County of Santa Clara ("the County"), Hung Mahn Nguyen aka

21   Sung Nguyen ("Nguyen"), Bruce Copley ("Copley"), and Does 1 through 25 oppose the motion.

22   The Court heard oral argument on November 30, 2007.  For the reasons discussed below, the

23   motion will be denied.

24                                    I. BACKGROUND

25          Pezoa alleges the following.  Pezoa, originally from Chile, began working for the County

26   at Narvaez Mental Health Center ("NMHC") as a psychiatric social worker on or about June 11,

27   _____

28          [1] This disposition is not designated for publication and may not be cited.

     Case No. C 05-03717 JF
     ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT
     (JFLC3)

1   2001.  First Amended Complaint ("FAC") ¶¶ 9, 13.  Nguyen, also employed by the County,

2   "maintained a workplace for psychiatric social workers that was segregated."  FAC ¶ 10.  "Two

3   groups of workers were designated by managerial policy into a 'Vietnamese Group' and a 'Latino

4   Group' whose working areas were officially designated by hallway signs with those

5   specifications."  FAC ¶ 10.  Pezoa asserts that the purpose of this physical segregation was "to

6   stymie and prevent interaction between these groups and to instill a sense of inferiority in the

7   'Latino Group'" FAC ¶ 10.

8          Pezoa alleges that Nguyen afforded the Latino Team "less flexibility in working

9   conditions" than the Vietnamese Team.  FAC ¶ 10.  On or about September 23, 2002, Nguyen

10  refused to allow Pezoa to meet with a client after hours, having made a similar refusal to Roberto

11  De La Cruz, another Latino Team member.  Nguyen allegedly showed more flexibility to two

12  Vietnamese Team members—allowing Tuan Tran to work after hours and leave early on

13  Tuesdays, while allowing Tien Tuong to meet regularly with clients after business hours.  FAC ¶

14  18.  With respect to team meetings, on or about October 17, 2002 Nguyen told the Latino

15  workers to meet daily, though Vietnamese workers continued to meet three times a week.  FAC ¶

16  24.  On or about January 17, 2003, Nguyen required that Pezoa "page[] him" before eating lunch

17  outside of "standard hours."  FAC ¶ 33.  Finally, on May 27, 2003, Nguyen "looked at [Pezoa]"

18  and told Latino Team members that if they had a question they should ask the "lead" or Nguyen

19  and they "'could not talk among each other in' [their] 'rooms.'" FAC ¶ 40.

20         Pezoa also alleges that the Latino Team was "assign[ed] higher work loads" than the

21  Vietnamese Team.  FAC ¶¶ 10, 13.  Pezoa alleges specifically that the Latino Team had "a much

22  higher caseload" by a margin of "about twenty cases more" per employee.  FAC ¶ 24.  Pezoa also

23  alleges disparity between the teams in covering "officer of the day" duties.  On or about January

24  15, 2003, a Latino Team member reported to Pezoa that "all of the clerical staff had been

25  instructed to give all of the English-speaking officer of the day calls to Latino Team members."

26  FAC ¶ 34.  On or about December 10, 2002, Pezoa learned that, per Nguyen's instructions, the

27  Latino Team was to provide "officer of the day" coverage for English-speaking and Spanish-

28

2

1   speaking clients.[2]  In addition, Pezoa alleges that the Latino Team was assigned "to tour police

2   officers . . . more times than the Vietnamese Team," even though the Latino Team "lacked staff."

3   FAC ¶ 24.  Despite the alleged staff shortage, on or about February 21, 2003, Nguyen told staff

4   that "the Latino Team would have a position code deleted/cut."  FAC ¶ 35.  Pezoa asserts that, as

5   of November 17, 2003, the Latino Team had four members while the Vietnamese Team had

6   seven.  FAC ¶ 50.

7          Pezoa "complained all the way up the County's chain of command to the level of the

8   Board of Supervisors."  FAC ¶ 14.  Pezoa does not indicate precisely when her complaints began,

9   but notes that she initially expressed her concerns to Nguyen "in front of the Latino service team

10   and in his office."  In response to her complaints, Defendants allegedly "retaliated against

11   Plaintiff and/or did nothing to protect her from retaliation."  FAC ¶ 56.  Pezoa alleges that on or

12   about June 28, 2002, "[i]n an effort to harass and retaliate against Plaintiff," Nguyen "said he did

13   'not know'" whether he would sign a critical check request for one of Pezoa's clients, eventually

14   signing it "days later."  FAC ¶ 17.  On or about October 1, 2002, Nguyen admonished De La

15   Cruz for "conspiring against" Nguyen with Pezoa.  Two days later, Pezoa and De La Cruz

16   presented Nancy Pena, Mental Health Department Director ("Pena"), and Copley with

17   "documentation depicting caseload discrepancies and concerns regarding Hung Nguyen's

18   management practices."  FAC ¶ 22.  On October 25, 2002, Nguyen allegedly reported the

19   meeting to the Vietnamese Team and said that  if "any member met with 'the union or Nancy

20   Pena' before speaking to him 'they would be reprimanded.'"  FAC ¶ 25.  On three occasions,

21   starting in November 2002, Nguyen highlighted Pezoa's absence at staff meetings, while on at

22   least one such occasion he ignored the absence of others.  FAC ¶¶ 30, 32, 36.

23          Pezoa filed a complaint with the United States Equal Employment Opportunity

24   Commission ("EEOC") sometime before November 12, 2002.  FAC ¶ 28.  She also alleges

25   subsequent attempts to report her concerns.  On or about November 12, 2002, County

26   _____

27          [2] The FAC is inconsistent on this point, with ¶ 11 identifying the date as "12-10-03"
     while ¶ 31 identifies the date as "December 10, 2002."  Given that the allegations are generally
28   presented in chronological order, the Court assumes that the correct date is December 10, 2002.

3

1   representative Karen Sweetland "implied she could not take [Pezoa's] complaint" because Pezoa

2   had already filed with the EEOC. FAC ¶ 28. On or about November 15, Defendant Copley

3   responded to concerns about segregation and caseload discrepancy by saying that Pezoa "had 'a

4   personality issue' with [Nguyen]." Pezoa filed a formal grievance with her union regarding

5   Nguyen's management practices on or about December 2, 2002, but after numerous

6   conversations was told by a union representative, Winnie Lu, that she had a "personal issue" with

7   Nguyen. On April 30, 2003, Plaintiff wrote a letter to Nguyen outlining her concerns regarding

8   caseloads and staffing. On or about May 9, 2003, Plaintiff gave a letter and documentation of her

9   complaints to the office of County Supervisor Blanca Alvarado..

10      On August 28, 2003, the San Jose Local Office of the EEOC issued a determination

11  letter, stating:

12      The evidence uncovered during the Commission's investigation establishes that
        Respondent segregates its psychiatric social workers on the basis of race and/or
13      national origin. Respondent has created a "Latino Room" for its non-Vietnamese
        social workers. Respondent is not coy about this as it even has hallway signs
14      designating 'Latino Group' and "Vietnamese Group". Moreover the evidence
        shows that Vietnamese social workers are benefitted by having lower case loads
15      and are accorded more flexibility in work hours than non-Vietnamese. As a result
        of Respondent's practices, there is little communication or interaction between the
16      various racial and ethnic groups, creating racial and ethnic tension and a hostile
        work environment.

17
        The investigation also disclosed that Charging Party was retaliated against for
18      engaging in protected activity, in that she continued to be subjected to a
        segregated work environment and an increased case load after she complained.

19
20  Opposition to County of Santa Clara's Motion to Dismiss, Ex. 1.[3]

21      Pezoa alleges that retaliation continued even after the EEOC issued its determination

22  letter. On or about September 9, 2003 the Vietnamese Team lead told Pezoa in private that

23  people in "upper management" had said Pezoa must have a "borderline personality disorder" to

24  be "bringing in the Feds" because "Nguyen is such as [sic] nice man," FAC ¶ 41. Pezoa alleges

25  that "any reasonable mental health care professional" would understand "Borderline Personality

26  Disorder" to refer to a clinical condition described in the DSM IV 301.83 and which would

27
28      [3] The Court has taken judicial notice of the EEOC determination letter as an exhibit
    submitted with Pezoa's opposition to the County's motion to dismiss Pezoa's *original* complaint.

4

1  suggest that Pezoa was unfit for her job.  Sometime before October 2, 2003, Nguyen told Lynn

2  Hart, and EEOC investigator, that he had experienced problems with sleep, high blood pressure

3  and ulcers since Pezoa started her job.  FAC ¶ 43.

4       On or about October 15, 2003, Latino Team "lead" Ritha Canales-Rossi, appointed by

5  Nguyen and loyal to him, told the Latino Team that "if [they] 'had concerns to go through her

6  first.'" FAC ¶ 44.  Pezoa alleges that Canales engaged in "harassment and retaliatory activities"

7  towards Pezoa.  Specifically, on or about October 15, 2003, Canales "told [Pezoa] to put down

8  [a] chart and pay attention," although Pezoa alleges it has been her regular practice to review

9  charts during meetings.  FAC ¶¶ 46, 51.  Canales complained about Pezoa's closed office door,

10  saying "'we don't do that in my culture,' and "made other demeaning orders and comments" to

11  Pezoa.  FAC ¶ 56.  Additionally, Pezoa alleges that on multiple occasions around

12  October/November 2003, Rosa Maria Ortega, a "clinical staff person" and sister of Ritha

13  Canales, delayed or interfered with the scheduling of Pezoa's clients while promptly assisting

14  Canales' clients.  FAC ¶ 44, 46.

15       Sometime before October 24, 2003, Nguyen was removed or suspended from his post

16  "for child molestation."  FAC ¶ 44.  Nguyen "has been convicted of sex crimes and is a mentally

17  disordered sex offender."  FAC ¶ 14.  However, on or about October 24, 2003, Pezoa learned

18  from Sean Chour that Copley "that [Nguyen] may be back within two weeks."  FAC ¶ 45.  On

19  the same day, Pezoa learned from Dr. Huynh, a staff psychiatrist, that Copley "had made copies

20  of all [Pezoa's] weekly schedules," though not those of other workers.  FAC ¶ 45.

21       On or about November 14, 2003, Pezoa presented her concerns regarding segregation,

22  caseloads, harassment, retaliation as well as and Nguyen personally at a meeting attended by

23  Maria Dupras, the County's Civil Rights Director; Pat Garcia, Mental Health Compliance

24  Manager; Diane Von Merta, manager of the Equal Opportunity Division; and Defendant Copley.

25  Pezoa presented "everything" regarding Nguyen's practices to Dupras and expressed a fear of

26  "more harassment" if Nguyen were to return.  Dupras informed Pezoa of "progressive discipline

27  procedures" and asked "why Pezoa had not taken her concerns to [Sweetland]."  FAC ¶ 50.

28       On or about November 17, 2003, the entire Latino Team met with Copley and "shared

5

concerns regarding Ritha Canales-Rossi, the Team Lead." Copley declined to meet with Pezoa individually. FAC ¶ 51. At the meeting, Canales said that Pezoa was "confrontational and defiant"and Copley supported Canales, "thereby ratifying Ritha Canales' harassment and retaliatory activities." FAC ¶ 51. The teams continued to meet separately, with the Latino Team bearing a heavier caseload with fewer staff. FAC ¶ 52.

On December 11, 2003, Copley asked Pezoa if "she would be willing to transfer to 'Fair Oaks Mental Health' since he was considering bringing Nguyen back to [NMHC]," and asked for a response by January 1. Pezoa also alleges that on seven occasions (though no details are provided in the complaint) Defendants prevented her from transferring from the office. FAC ¶ 56.

On July 19, 2005, the Civil Rights Division of the United States Department of Justice issued a "right to sue" letter. Pezoa brought the instant action on September 14, 2005. On March 3, 2006, the Court dismissed Pezoa's first, second and, third claims with leave to amend. Pezoa filed her First Amended Complaint ("FAC") on April 17, 2006. Pezoa alleged four claims for relief: (1) employment discrimination pursuant to 42 U.S.C. §§ 2000e-2(a)(1) and (2); (2) retaliation pursuant to 42 U.S.C. § 2000e-3(a); (3) violation of California Labor Code §§ 1102.5 and 1105; and (4) failure to prevent discrimination and harassment pursuant to California Government Code § 12940(j). On August 8, 2006, the Court denied the County's motion to dismiss these claims. Pezoa now seeks leave to file a Second Amended Complaint ("SAC") adding additional claims for Negligent Hiring/ Promotion, Negligent Assignment, and Negligent Retention. The County opposes the motion.

## II. PEZOA'S MOTION FOR LEAVE TO AMEND

Pezoa's request for leave to amend is governed by Federal Rule of Civil Procedure 15(a), which provides that "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). In deciding whether to grant leave to amend, the Court will consider several factors, including: (1) undue delay by the party seeking the amendment; (2) prejudice to the opposing party; (3) bad faith; (4) futility of amendment; and (5) whether the party previously has amended its pleadings. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

6

1    Defendants argue that several factors weigh against granting leave to amend in this

2    instance, including undue delay, bad faith, and the alleged futility of the new claims because they

3    do not relate to the harm Pezoa allegedly suffered.

4    **1.    Undue Delay**

5    Courts find undue delay when a party fails to explain why she did not amend her

6    complaint within a reasonable time after acquiring full knowledge of the situation and when a

7    party "cite[s] no facts or theories gleaned from the additional discovery period" between the time

8    of the original complaint and motion for leave to amend. *Jackson v. Bank of Hawaii*, 902 F.2d

9    1385, 1388 (9th Cir. 1990). *See also, E.E.O.C. v. Boeing Co.,* 843 F.2d 1213, 1222 (9th Cir.),

10   *cert. denied*, 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 212 (1988); *Parker v. Joe Lujan Enters.,*

11   *Inc.,* 848 F.2d 118, 121 (9th Cir.1988); *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1324

12   (9th Cir.), *vacated on other grounds*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982).

13   Defendants argue that Pezoa has known of Nguyen's criminal convictions at least since

14   October, 2006, but waited over a year, until October 31, 2007, to file the instant motion.

15   Defendants argue that Pezoa's delay is unfair and prejudicial, particularly because the

16   amendments stray so far from the original subject matter of Pezoa's complaint.  At oral

17   argument, Pezoa's attorney stated that her health problems and lack of office help caused the

18   long delay in filing.

19   Pezoa already has amended her complaint twice.  By her counsel's admission, although

20   she did not discover any additional facts or develop any new theories in the interim, she waited

21   over a year to file the instant motion.  Counsel's explanation for her delay is unsupported by any

22   declarations, medical records, or the like.  Accordingly, the Court concludes that the delay in

23   filing the instant motion appears to be undue.

24   **2.    Bad Faith**

25   Examples of bad faith have included–but are not limited to–instances in which a party

26   makes a claim without alleging any newly discovered facts, makes a tactical decision to omit a

27   claim to avoid summary judgment, or includes a claim to harass or burden the other party.  *E.g.,*

28   *Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1161 (9th Cir. 1989); *Acri v.*

7

1   *International Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9ᵗʰ Cir. 1986);

2   *M/V American Queen v. San Diego Marine Const. Corp*., 708 F.2d 1483, 1492 (9ᵗʰ Cir. 1983).

3   Pezoa states that leave to amend should be granted in this case in order to "clarify issues and

4   potentially prevent the court's having to step into a discovery dispute."  Memorandum at 7.

5   Pezoa states openly that the purpose of her amendment is to create "relevancy" in order to gain

6   access to Nguyen's personnel file.  Pezoa thus all but admits in her papers that she is seeking to

7   amend her complaint at least in part to obtain discovery that arguably has no relevance to her

8   original claims of discrimination and retaliation.  While the Court does not doubt counsel's

9   sincere commitment to her client's case, the amendment thus appears to be sought for an

10  inappropriate purpose.

11      **3.      Futility**

12      Courts have found a claim to be futile when the claim is unrelated to the matter at hand or

13  unlikely to succeed.  *E.g., Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764,

14  772 (9th Cir. 1991) (finding a denial to amend proper when party's request to amend seemed "to

15  be nothing more than a desperate effort at persuading the [district] court to retain jurisdiction,"

16  *quoting  Contact Lumber Co. v. P.T. Moges Shipping Co.,* 918 F.2d 1446, 1454 (9th Cir. 1990)).

17  Defendants assert that Pezoa's new claims are futile because: (1) there is no statutory basis for

18  the County's liability; (2) the claims are time-barred; and (3) the claims bear no relation to the

19  harm allegedly suffered by her.

20      Pezoa's proposed new claims do not appear to be time-barred because Pezoa apparently

21  did not learn of Nguyen's criminal convictions until at least a year after she had filed her initial

22  complaint.  However, Pezoa has not identified any duty owed by the County to her not to hire,

23  promote, assign, or retain a person who have been convicted of a crime based on conduct

24  unrelated to the alleged claims. Nor has Pezoa alleged any obligation owed by the County to her

25  to investigate and discover Nguyen's prior convictions.  As discussed above, Pezoa's allegations

26  relate to employment discrimination; she does not in any way demonstrate how the new claims

27  relate to the harm she alleges.  Accordingly, there is no basis in the present record upon which

28  the Court could conclude that Pezoa's new claims would not be futile.

Case No. C 05-03717 JF
ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT
(JFLC3)

1

**III. ORDER**

2          For the reasons set forth above, the motion for leave to file a Second Amended Complaint

3 is DENIED.

4

5 IT IS SO ORDERED.

6

7

8 DATED: December 6, 2007
                                                    _____
9                                                   JEREMY FOGEL
                                                    United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 05-03717 JF
ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT
(JFLC3)

1    This Order has been served upon the following persons:

2

3    Marguerite M. Buckley      magibee2004@yahoo.com, janbtucker@aim.com

4    John L. Winchester , III    jlw@robinsonwood.com

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 05-03717 JF
ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT
(JFLC3)